## BARTLETT *vs.* BARTLETT.

Alimony will not be allowed to a wife for her support during the progress of the suit, when it appears that she has left her husband and gone to her father's, and that the father agreed with the husband that he would make no claim for the wife's support, if the husband would make no claim for the wife's services.

In a suit for nullity of marriage, the legislature have not authorised this court to make an order against the husband for the support of the wife, *pendente lite*, or to provide funds to defray the expenses of the suit. The authority conferred, applies only to cases of suits for divorces or for separation.

THE bill in this cause was filed to obtain a decree of nullity of marriage, in consequence of the impotency and physical incapacity of the defendant, which is alleged in the bill to be incurable. The present petition is on behalf of the female complainant for alimony and expenses. The affidavits of the defendant denies the impotency and physical incapacity, and shows that the complainant went from the house of her husband to that of her father; and that her

father agreed with the husband if he would make no
claim for the value of his wife's services, he (the fa-
ther) would make no claim upon the husband for the
wife's support; and that she should not involve her
husband in debt by any acts of her own.

*I. Houghton,* for complainant.

*James Mullett,* for defendant.

THE VICE CHANCELLOR. As to the claim for
the monthly or stated allowance for the support of
the wife during the continuance of this suit, the affi-
davits are conclusive. The complainant left her hus-
band, and went to reside with her father. That fa-
ther has agreed to support her, and does support
her; and informed the husband that he should make
no charge for her support, if he (the husband) made
no claim for his wife's services. The woman has
therefore a home and a support, and there is no ne-
cessity for calling upon the husband to contribute to
this object. This matter has been arranged between
the father and the husband of the woman, and there
we shall permit it to rest. But the complainant will
still insist that the defendant shall pay her solicitor
a counsel fee, to enable her to carry on this suit
against her husband. In most cases of bills for se-
paration for cruel treatment, or for divorce for adul-
tery, applications of this kind are granted almost as
a matter of cause. The books are full of such ca-
ses. Wood vs. Wood, 2 Paige, 115; Osgood vs.
Osgood, 2 Paige, 621; Lawrence vs. Lawrence, 3
Paige, 267; Wright vs. Wright, 1 Edwards' Rep.
62; Smith vs. Smith, 1 Edwards, 255; Stanford
vs. Stanford, 1 Edwards, 317; Robertson vs. Ro-

bertson, 1 Edwards, 360 ; Saunders vs. Saunders 2 Edwards, 491. These cases present almost every conceivable variety of feature ; and in all of them, alimony and expenses were allowed to the wife, whether she was plaintiff or defendant. But in all these cases, and in all the cases which I have examined, when alimony was allowed, the suits were for separation on the account of cruel treatment, or for divorce on the ground of adultery.

It will be remembered that the case before us is different. The object of the bill here is not for a divorce or a separation ; but for a decree of nullity of the marriage, on account of the impotency of the husband.

The legislature have vested in this court power to interfere with the marriage contract, or an alleged marriage contract, in these cases ; and provided for in these different and distinct articles of the Revised Statutes.

In Part 2, Chap. 8, Title 1, Article 2, the Chancellor is authorised, by sentence of nullity, to declare a marriage contract void for certain causes. One of those causes is, when one of the parties was physically incapable of entering into the marriage state. 2 Rev. Stat. p. 142, Sec. 20. That is this case. By article 3d, a divorce may be granted, and the marriage dissolved on the ground of adultery. By article 4, a separation may be decreed for any of the causes specified in that article. Section 58, Article 5, 2 Rev. Stat. p. 148, provides that "in every suit brought either for a divorce or for a separation, the court may, in its discretion, require the husband to pay any sum necessary to enable the wife to carry on the suit during its pendency," &c. This is con-

fined to suits for divorce or separation; and this article is headed, "General Provisions, applicable to the last two articles," viz. articles 3 and 4; and does not apply to srticle 2, under which this suit is brought. The bill in this case is filed neither for a divorce or separation under articles 3 or 4, but for annulling the marriage contract under article 2. When the suit is brought for divorce or separation, the legislature have authorised, in conformity with the previous practice of this court, an allowance to the wife, out of the property of the husband; but as to suits brought for nullity of marriage under article 2, they have given no such authority. There were no previous decisions of the courts in such cases, to warrant such allowance—there have been no decisions since. The legislature have, impliedly at least, given us to understand that in suits brought under article 2, the husband should not be compelled to defray the expenses of his wife's litigation or for her support during its continuance, if she chose to leave him. The reasons operating or bearing upon the different class of cases, are evidently very different. In case of cruel treatment or adultery, the wife evidently could not remain with the husband—in the one case, without danger to her personal security; and in the other, without a violation of her purity of principle; and as the husband is presumed to have all the property of the wife, unless he was made to contribute to the litigation and her support in the mean time, the wife would be remediless under the most grievous wrongs.

But this case is entirely different, and proceeds upon the ground that there never was any marriage in law; and asks the court to declare it null. There is no reason why the woman cannot live safely with

Feb. 1841.

the man she has wedded. If the charge in the bill is true, it is the man's misfortune, possibly, not certainly his fault. There is no error of temper or of conduct in him; and if he was physically incapable of entering the marriage state, and the wife felt that to be a grievance, she could. doubtless enlist some friend to aid her in procuring the contract to be declared null. That, the woman has done in this case. She has a next friend who must be presumed to be responsible, and that friend must conduct this indelicate litigation for her, at his and her risk.

I can find no authority, precedent, or reason for compelling the husband to pay the expense of it, at least in this stage of the suit; and no sympathy, in this case, to stretch a doubtful authority, if there were any.

The prayer of the petition is denied, with twelve dollars costs, to be paid by the next friend of the complainant.